The STATE of Ohio, Appellee,

v.

ORTIZ, Appellant.

[Cite as *State v. Ortiz*, 185 Ohio App.3d 733, 2010-Ohio-38.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 08CA009502.

Decided Jan. 11, 2010.

Dennis P. Will, Lorain County Prosecuting Attorney, and Mary R. Slanczka, Assistant Prosecuting Attorney, for appellee.

Laura A. Perkovic, for appellant.

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1} Eric Ortiz had sex with T.B., which she said was without her consent. The grand jury indicted him for rape, and following a bench trial, the court convicted him of the lesser included offense of sexual battery. The court sentenced him to five years of community control and told him that he would be classified as a Tier III sex offender under the Adam Walsh Act. Ortiz has appealed his conviction and sexual-offender classification, arguing that the evidence did not support the court's consideration of sexual battery as a lesser included offense, that his conviction is against the manifest weight of the evidence, and that the Adam Walsh Act is unconstitutional. This court affirms because the trial court's consideration of sexual battery as a lesser included offense was supported by the evidence, Ortiz's conviction is not against the manifest weight of the evidence, and his sex-offender classification does not violate his constitutional rights.

## FACTS

{¶ 2} Ortiz and T.B. met in January 2005 through a telephone chat line. After exchanging messages, they started talking on a regular basis and having three-way conversations with Matthew Hudy, a childhood friend of Ortiz's who had moved to Texas. Ortiz and T.B. met for the first time in person on Valentine's Day, when T.B. invited Ortiz to her apartment. During their first meeting, Ortiz talked with T.B. and her friend Pat, who lived across the hall. Ortiz brought a plastic rose for each of the women.

{¶ 3} About a week later, T.B. invited Ortiz over to watch a movie. They talked throughout the evening and had consensual sex. Although Ortiz spent the

entire night with T.B., the next morning, they left their relationship as "[j]ust friends." A few days later, T.B. invited Ortiz over again. They again had consensual sex, but remained "just friends" or "friends with benefits" afterwards. They continued talking during the following weeks, but did not get together again for over a month. During that time, T.B. also continued talking with Hudy and developed feelings for him. Even though she had not met him in person, she had planned to invite Hudy back to Ohio to move in with her.

{¶ 4} On April 3, 2005, Ortiz called T.B. to ask whether she would like to go to a bar to watch Wrestlemania with him. At the time of the call, T.B. was with her friend Lisa, so Ortiz invited Lisa to come too. Although Ortiz met the women at T.B.'s apartment, T.B. and Lisa drove to the bar together in Lisa's car, and Ortiz drove separately. About an hour after they arrived, Lisa received a telephone call and had to leave. Ortiz offered to give T.B. a ride home, so she continued watching wrestling with him. Ortiz alleged that T.B. flirted with him after Lisa left, which T.B. denied, explaining that the bar was too loud for them to talk. T.B. alleged that as they were driving back to her apartment, Ortiz asked her to perform oral sex on him. Ortiz denied her allegation.

{¶ 5} When they reached T.B.'s apartment, Ortiz asked whether he could come inside to use her bathroom. T.B. agreed, because the men's restroom at the bar had been closed. When Ortiz was finished in the bathroom, he came out to the living room and sat in a chair. T.B. initially sat on the arm of a couch, but after they talked for a while, moved onto the couch. A little while later, Ortiz moved next to T.B. and began kissing her. He turned toward T.B., straddled one of her legs, and began sucking on her neck and fondling her breasts.

{¶ 6} According to T.B., Ortiz suddenly pulled her off the couch. She explained that even though she is bigger than he is, he was able to get her off the couch by catching her by surprise. She said he dragged her pants down to mid-thigh, pushed her legs up in the air, pulled her underwear aside, and began having sex with her. She said that she was crying and told Ortiz "no" and "stop," but he continued until he ejaculated. She said that after he got off her, he apologized and agreed to call Hudy to tell him what he had done.

{¶ 7} According to Ortiz, T.B. was also kissing him and helped move herself off the couch. He said that he could not have pulled her off the couch without her assistance because she is taller than he is and outweighs him by 80 pounds. He said that he unbuttoned her pants and that she lifted herself off the floor as he slid them down. He acknowledged that he pushed her legs in the air and moved her underwear aside to have sex, but explained that that was how they had had sex the previous time. He said she was moaning at first, but that after about a minute, she started saying "[o]w" and "it hurts," so he stopped when she asked, because he had already ejaculated. He said he apologized to T.B. for the fact

that it had hurt. He said that after they were finished, T.B. began crying because she realized that Hudy would be upset when he heard that they had had sex again. He said it was only then that he learned she had feelings for Hudy. He said that they talked for awhile about their kids and that he left about 20 minutes later.

{¶ 8} After Ortiz left, T.B. went over to Pat's apartment and told her that he had raped her. The next day, Pat convinced her to receive a sexual-assault examination. The nurse who examined T.B. found injuries that were consistent with the position in which Ortiz and T.B. had had sex. She said, however, that the injuries were consistent with both consensual and nonconsensual sex.

{¶ 9} A few days later, T.B. told the police that Ortiz had raped her. The grand jury indicted him for rape. Before trial, Ortiz's lawyer moved for a competency hearing, arguing that Ortiz had "diminished comprehension capacity." The trial court denied his motion without holding a hearing. A jury found him guilty of rape, and he appealed. This court reversed his conviction because the court had not held a hearing on his competency to stand trial.

{¶ 10} On remand, the court held a competency hearing and determined that Ortiz was competent to stand trial. He waived his right to a jury trial and proceeded to a bench trial. The court found him not guilty of rape, but guilty of the lesser included offense of sexual battery. It sentenced him to five years of community control and explained that he would be classified as a Tier III sex offender. Ortiz has appealed, assigning three errors.

## POSTRELEASE CONTROL

{¶ 11} Although the parties did not raise the issue in their briefs, they suggested at oral argument that the trial court's sentencing entry is void because it does not indicate whether postrelease control is mandatory or discretionary. R.C. 2967.28(B) provides that "[e]ach sentence to a prison term * * * for a felony sex offense * * * shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment." R.C. 2929.14(F)(1) provides that "[i]f a court imposes a prison term * * * for a felony sex offense, * * * it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment * * *." The Ohio Supreme Court has held that if the trial court does not comply with those provisions, the defendant's sentence is void. See, e.g., *State v. Simpkins*, 117 Ohio St.3d 420, 2008–Ohio–1197, 884 N.E.2d 568, at syllabus. In this case, however, the court did not sentence Ortiz to "a prison term." R.C. 2967.28(B); R.C. 2929.14(F)(1). Instead, it imposed five years of community control. Accordingly, R.C. 2967.28(B) and 2929.14(F)(1) do not apply. This court, therefore, concludes that

the sentencing entry is not void because it does not indicate whether postrelease control is mandatory or discretionary.

## LESSER INCLUDED OFFENSE

{¶ 12} Ortiz's first assignment of error is that the trial court incorrectly convicted him of the lesser included offense of sexual battery. He has argued that the evidence presented at trial did not support consideration of sexual battery as a lesser included offense of rape.

{¶ 13} The grand jury indicted Ortiz under R.C. 2907.02(A)(2). Rape occurs under that section "when the offender purposely compels the other person to submit [to sexual conduct] by force or threat of force." The court convicted him, instead, of sexual battery under R.C. 2907.03(A)(1), which occurs when "[t]he offender knowingly coerces the other person to submit [to sexual conduct] by any means that would prevent resistance by a person of ordinary resolution."

{¶ 14} The Ohio Supreme Court has held that sexual battery under R.C. 2907.03(A)(1) is a lesser included offense of rape under R.C. 2907.02(A)(2). *State v. Johnson,* 112 Ohio St.3d 210, 2006–Ohio–6404, 858 N.E.2d 1144, at ¶ 268, citing *State v. Wilkins* (1980), 64 Ohio St.2d 382, 386, 18 O.O.3d 528, 415 N.E.2d 303. Whether it may be considered in a given case, however, depends on the evidence presented at trial. "If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless [it] could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense." *Wilkins* at 388, 415 N.E.2d 303. It is only when "the trier of fact could both acquit the defendant of the charge of rape * * * and find him guilty of sexual battery" that consideration of sexual battery is appropriate. Id.

{¶ 15} There are two material differences between the elements of rape under R.C. 2907.02(A)(2) and of sexual battery under R.C. 2907.03(A)(1). First, the offenses require different mens reae. Rape must be done purposely, while sexual battery may be done knowingly. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances

when he is aware that such circumstances probably exist." R.C. 2901.22(B). Second, rape requires force, while sexual battery requires only coercion. "Coercion for purposes of sexual battery is broader than the force required to prove rape and necessarily includes all uses of force. Force is not required to prove coercion." *State v. Wilkins,* 64 Ohio St.2d at 386, 18 O.O.3d 528, 415 N.E.2d 303.

{¶ 16} Ortiz has argued that the evidence did not support consideration of sexual battery as a lesser included offense. According to him, it "provided for an 'all or nothing' deliberation of the rape charge," similar to what the Ohio Supreme Court determined in *State v. Wilkins,* 64 Ohio St.2d at 388, 18 O.O.3d 528, 415 N.E.2d 303. In *Wilkins,* the Supreme Court noted that "[t]wo completely divergent stories were presented to the jury herein. In defendant's version coercion was not involved. In the prosecution's version force was clearly involved." Id. Because "[n]o evidence was presented which would allow the jury to find that coercion other than force was used," it concluded that the court did not have to give an instruction on sexual battery. Id.

{¶ 17} Ortiz has argued that like in *Wilkins,* there was no "evidence of coercion other than force." Even if he is correct, he has failed to recognize that that was not the basis for the trial court's consideration of sexual battery as a lesser included offense. Following trial, the court denied Ortiz's motion for judgment of acquittal. In its judgment entry, it explained that it had focused not on the difference between force and coercion, but on Ortiz's mental state. It wrote that it "need only have had a reasonable doubt with respect to [Ortiz's] culpable mental state, i.e. whether it was defendant's purpose to compel sexual conduct by force. The court had this doubt, and resolved the doubt in [his] favor."

{¶ 18} Regarding the difference in the mens rea required for sexual battery and rape, the Supreme Court has explained that "[i]t is possible for a person to compel another to engage in sexual conduct by force or threat of force knowingly but not purposely. A person could subjectively believe that there is consent where there is none, and in using his strength could coerce another to submit by force. In such a case he would not intend to do the prohibited act. However, if he is aware of the circumstances that probably exist and that under such circumstances there probably is no consent he would have knowingly coerced another to engage in sexual conduct by force." *State v. Wilkins,* 64 Ohio St.2d at 386–387, 18 O.O.3d 528, 415 N.E.2d 303.

{¶ 19} There was evidence before the trial court from which it could have found that Ortiz misunderstood T.B.'s refusal to consent. See *State v. Stanford* (July 5, 1990), 9th Dist. No. 89CA004678, 1990 WL 95722, at *4. There was testimony that he is mentally handicapped, with an IQ between 55 and 70. T.B. voluntarily let him into her apartment, where they had had consensual sex a couple of times a few weeks earlier, despite being "just friends." There was also testimony that

T.B. is larger than Ortiz and that he would have been unable to move her off the couch or pull her pants down without her acquiescence. There was no evidence that T.B. tried to push Ortiz off her while the sex was happening, and they agreed that he stopped when he realized he was hurting her. Ortiz also said that he did not know T.B. had feelings for Hudy until after he stopped. This court, therefore, concludes that Ortiz could have subjectively believed that T.B. consented to the sex even though the facts and circumstances indicate that she did not. *State v. Wilkins* at 387, 18 O.O.3d 528, 415 N.E.2d 303. Accordingly, the trial court properly considered sexual battery as a lesser included offense of rape. Ortiz's first assignment of error is overruled.

## MANIFEST WEIGHT

{¶ 20} Ortiz's second assignment of error is that his conviction for sexual battery is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 21} Ortiz has argued that T.B.'s actions indicate that the sex was consensual. He has noted that she remained in his car after he allegedly asked her to perform oral sex on him while they were driving back to her apartment. T.B. testified that she threatened to get out and walk to the home of her parents, who lived nearby, but stayed because Ortiz said he was just kidding after she scolded him. He has also noted that after he started to kiss and fondle T.B. on the couch, she did not ask him to leave or seek help from her neighbor Pat, who lived across the hall and was home babysitting for T.B.'s children.

{¶ 22} Ortiz has also pointed to testimony from T.B. that he has alleged was inconsistent or not credible. He has noted that she said he left a suckerbite on the left side of her neck, even though he was sitting to her right. She said he pulled her off the couch without her assistance, even though she weighed 80 pounds more than he did. She also said he was able to pull her pants down without unbuttoning or unzipping them, even though they had stayed around her waist without any problem while she was standing at the bar for a couple of hours earlier that evening. He has also alleged that she said he pushed her legs straight up in the air, despite testifying at the first trial that he was between her legs while the sex was happening. He has further noted that Pat testified at the first trial that T.B. told her she was raped on the couch and that the sexual-

assault nurse did not have in her notes that he pulled her off the couch. According to Ortiz, his version of the events was more plausible.

{¶ 23} The inconsistencies Ortiz has noted were minor at best. Although he initially may have been sitting to the right of T.B., both of them said that he turned toward her and straddled her leg. From that position, he would have been able to suck on the left side of her neck. As explained earlier, whether T.B. helped lower herself from the couch is one of the facts the court may have considered in determining whether he misunderstood her refusal to consent. Whether T.B.'s pants were buttoned when Ortiz pulled them down was not relevant to whether he forcibly pulled them down. In addition, while T.B. testified that her legs were in the air during the sex, she did not say that they were "straight up in the air" at this trial. Accordingly, it was not inconsistent for her to say that Ortiz was between them. Furthermore, the fact that T.B. did not tell her friend or the nurse that the sex had occurred on the floor does not mean that it did not happen there, especially in light of Ortiz's own testimony that he "pulled her off the couch."

{¶ 24} Having reviewed the entire record, this court concludes that the trial court did not lose its way and create a manifest miscarriage of justice when it convicted Ortiz of sexual battery. His second assignment of error is overruled.

## ADAM WALSH ACT

{¶ 25} Ortiz's third assignment of error is that the Adam Walsh Act is unconstitutional and cannot be applied to him. He has argued that his classification as a Tier III sex offender violates the Ex Post Facto Clause of the United States Constitution, the Retroactivity Clause of the Ohio Constitution, the Separation of Powers Doctrine embodied in the Ohio Constitution, the Double Jeopardy Clauses of the Ohio and United States Constitutions, and due process and constitutes cruel and unusual punishment as prohibited by the Ohio and United States Constitutions.

{¶ 26} Ortiz has acknowledged that this court has previously rejected most of his arguments. In *State v. Honey*, 9th Dist. No. 08CA0018–M, 2008–Ohio–4943, 2008 WL 4377441, this court concluded that the Adam Walsh Act was not unconstitutionally retroactive and was not an ex post facto law. Id. at ¶ 11, 19. In *Brooks v. State*, 9th Dist. No. 08CA009452, 2009–Ohio–1825, 2009 WL 1035071, it concluded that the Adam Walsh Act does not violate due process, place sexual offenders in double jeopardy, or violate the separation-of-powers doctrine Id. at ¶ 18, 25, 26.

{¶ 27} This court has not considered whether a defendant's classification as a Tier III sex offender under the Adam Walsh Act is cruel and unusual punish-

ment. This court has determined, however, that "neither the registration nor the community-notification provisions of the Adam Walsh Act inflict punishment." *Brooks v. State* at ¶ 25. "[I]t logically follows that [they do] not constitute cruel and unusual punishment since the punishment element is lacking." *State v. Byers*, 7th Dist. No. 07CO39, 2008–Ohio–5051, 2008 WL 4416519, at ¶ 77. Ortiz's third assignment of error is overruled.

## CONCLUSION

{¶ 28} The trial court correctly considered sexual battery as a lesser included offense of rape, Ortiz's conviction is not against the manifest weight of the evidence, and the Adam Walsh Act is not unconstitutional. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

CARR and BELFANCE, JJ., concur.