[Cite as *State v. Gary*, 2012-Ohio-5813.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | | C.A. No.     12CA0014 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARCUS GARY | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No.     11-CR-0272 |

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

MOORE, Judge.

{¶1}    Defendant, Marcus Gary, appeals from the judgment of the Wayne County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On October 3, 2011, the Wayne County Grand Jury indicted Mr. Gary on one count of rape in violation of R.C. 2907.02(A)(2) and one count of sexual battery in violation of R.C. 2907.03(A)(1).  At his arraignment, Mr. Gary pleaded not guilty, and the case proceeded to a jury trial.  The jury found Mr. Gary guilty of rape but not guilty of sexual battery.  The trial court sentenced him to ten years of incarceration on the rape conviction and to four years and five months of incarceration as a sanction for violation of postrelease control, to which he was subject from a prior case.  Mr. Gary timely filed a notice of appeal and raises three assignments of error for our review.  We have re-ordered the assignments of error to facilitate our discussion.

II.

**ASSIGNMENT OF ERROR II**

THE CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT
OF EVIDENCE.

{¶3}   In his second assignment of error, Mr. Gary argues that his rape conviction is against the manifest weight of the evidence.  We disagree.

{¶4}   When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶5}   Here, Mr. Gary was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).  In regard to "force or threat of force," R.C. 2901.01(A)

defines "force" as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." A defendant purposely compels his victim to submit by force or threat of force when he "uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. Force or the threat of force "can be inferred from the circumstances surrounding the sexual conduct." *Schaim* at 55; *State v. Martin*, 9th Dist. No. 94CA005909, 1995 WL 296313, *2 (May 17, 1995). Where "it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Pordash*, 9th Dist. No. 04CA008480, 2004-Ohio-6081, ¶ 12, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988).

{¶6} Here, as part of its case-in-chief, the State presented the testimony of the victim ("B.S."), three of B.S.'s adult neighbors: Morgan, Jenny and Chelsea, a sexual assault nurse, and the responding officer. B.S. testified that, while walking home from the park one afternoon, Mr. Gary approached her and asked her to help him find his house. She agreed and they began walking together. When they reached a green garage across from an abandoned home, Mr. Gary began pushing her on the chest. He then removed some of her clothes, including her bra, and licked her breasts. B.S. was scared and nervous, and she told him to stop, but he then took her shorts off of her as well as her underpants. B.S. explained that Mr. Gary put "[h]is fingers in [her]." He also lowered his pants and showed her his penis, and she pushed him away. She observed him put on a condom, and she told him to stop. Ultimately, B.S. pushed Mr. Gary away and quickly put her clothes back on. Mr. Gary told her that, if she told anyone about the incident, he would kill her. She then ran from the scene toward her house. On her way home, she was crying, and two women stopped to ask her what had happened. She informed the

women that she had been raped, and they drove her home. Thereafter, she spoke with a police officer and went to the hospital for an examination.

{¶7} Morgan and her mother, Jenny, live nearby B.S. and testified that Morgan had encountered Mr. Gary earlier that day. While Morgan was on her porch talking on the telephone, Mr. Gary walked up beside her and as he sat next to her, he began touching her leg and lower back. Morgan, who had never seen Mr. Gary, was uncomfortable and scooted away from him. When her mother saw Mr. Gary continuously scooting toward Morgan, she went outside and told him to leave, and he complied. Morgan then left with her friend, Marie, who had driven to Morgan's home.

{¶8} While Marie, Morgan, and Morgan's neighbor Chelsea were driving in the area of Morgan's home, the women saw B.S. standing on the sidewalk, speaking with Mr. Gary. Morgan was concerned for B.S. due to Mr. Gary's earlier behavior toward Morgan, and because Morgan believed B.S. to be "slower" and incapable "of understand[ing] fully what he could do to her." Morgan asked Marie to stop the vehicle nearby. She soon heard B.S. yelling, and Marie left the car to get assistance.

{¶9} Chelsea testified that she also was concerned when they drove past B.S. and Mr. Gary because she had heard of Morgan's earlier encounter with Mr. Gary. After Chelsea returned home, Marie came to her house, and the two remained on her porch, from where they saw B.S. running down the street about ten minutes after having seen her speaking with Mr. Gary on the sidewalk. The women approached B.S., and they could see that she was crying and "hysterical," and she told them that "she just almost got raped." After calling for police assistance, the women took B.S. home.

{¶10} Officer McConnell testified that he was dispatched to B.S.'s home on the date in question in response to a reported rape. When he arrived, he spoke with B.S., who was "sobbing," "shaking," and appeared to be "traumatized." It became clear to him that B.S. was developmentally impaired in some way, and it was difficult for him to put together a coherent, chronological description of the incident based upon their discussion. However, B.S. was able to lead the officer to the green shed next to where she alleged that she was attacked. An opened condom package, a condom, and an unopened condom package were immediately apparent to the officer on the grass next to the shed. These items were not dirty and appeared to have "just been dropped there." B.S. told the officer several times that her vaginal area was hurting, and the officer's on-call detective recommended an examination. The officer transported her to the hospital.

{¶11} When the officer later received a report that the man who was involved in the incident was located at a gas station, the officer went there and spoke with Mr. Gary. Mr. Gary agreed to come to the police station, where the officer interviewed him. A recording of the interview was entered into evidence by the State, as was a short letter of apology that the officer requested Mr. Gary write to B.S. In the interview, Mr. Gary maintained that he at no time touched her, but admitted they had spoken regarding her age and sexual history. He also admitted that when retrieving a condom from his pocket to show her, his pants may have come down somewhat, exposing his penis. At the end of the interview, Officer McConnell placed Mr. Gary under arrest.

{¶12} Mr. Gary's apology letter states, "I am apol[o]gizing to you because I have behavior problems in the past and you weren't giving me an issue and it never cross my mind to

harm you in any kind of way hopefully you can forgive me and live a better life than I have chose."

{¶13} Christine Hawkins, a sexual assault nurse examiner for Wooster Community Hospital, testified that she was on call when B.S. arrived at the hospital. When the nurse spoke with her, B.S. was tearful and anxious. B.S. told her that her attacker had covered her mouth when she tried to scream, and "[h]is hand went inside[.]" The nurse asked B.S. if this was "with his privates," and she replied that "he almost did." B.S. told her that "it hurt inside," and when the nurse asked where, B.S. pointed to her vaginal opening on a diagram. The nurse explained that during her examination, she witnessed no evidence of tissue damage, but in a majority of cases of sexual assault, there are no physical signs of trauma or tissue damage. B.S. also reported to the nurse that her attacker had licked her face, and Ms. Hawkins collected a swab sample from her cheek and completed a sexual assault kit.

{¶14} On cross-examination, Ms. Hawkins confirmed that she had not taken swab samples from B.S.'s breasts, but, if B.S. had told her that her attacker had licked her breasts, she would have done so. Ms. Hawkins testified that she examined B.S. approximately two hours after the alleged attack, and depending upon several other factors, state protocol advises to collect swab samples for saliva within 96 hours. The nurse testified that after she finished collecting samples, she contacted law enforcement.

{¶15} Officer McConnell testified that he was in contact with medical personnel who informed him that B.S. had alleged that Mr. Gary had digitally penetrated her and that a sexual assault kit had been completed. The officer returned to the jail to speak with Mr. Gary to inquire if he would give his consent for a DNA sample. He agreed, and the officer swabbed both of his hands and obtained a DNA sample from Mr. Gary's inner cheek. However, the officer explained

that, because of the time delay between the incident and the interfering factor of the booking process, he believed that any trace DNA that may have existed on Mr. Gary's hands may have been gone. On cross-examination Officer McConnell confirmed that the booking officers had reported using very little water during the fingerprinting, which is performed with a digital scan and not with an ink pad.

{¶16} The parties submitted as joint exhibits the reports of the Bureau of Criminal Identification. These reports indicate that no amylase or semen were located on the skin swab samples taken B.S.'s thigh or on the samples taken from her underwear. Further, Mr. Gray's DNA was not found in swabs samples taken from B.S.'s underwear or from the skin swab sample from her cheek. Lastly, B.S.'s DNA was not found in the swab samples taken from Mr. Gary's hands.

{¶17} In his merit brief, Mr. Gary argues that the rape conviction was against the manifest weight of the evidence because (1) there existed no physical evidence of penetration, (2) no DNA testing was performed on the opened condom, (3) B.S. did not testify consistently as to digital penetration, (4) B.S. testified as to apparent initial consent, and (5) the verdicts of guilty of rape and not guilty of sexual battery were inconsistent.

{¶18} Although B.S.'s testimony was at times unclear or inconsistent with the accounts of the incident when compared to the accounts that other witnesses had recalled her previously providing, she clearly testified that Mr. Gary "started pushing" her upon reaching the green garage, that she was scared, and that he digitally penetrated her. "The jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice

inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). We cannot say the jury's resolution of the inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events."). Further, the jury "has the right to place considerable weight on the testimony of the victim," and "a rape victim's testimony need not be corroborated by physical evidence in order to sustain a conviction." *State v. Felder*, 9th Dist. No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992); *State v. Arias*, Case No. 04CA008428, 2004-Ohio-4443, ¶ 32, citing *State v. Battle*, 9th Dist. No. 15869, 1993 WL 303253, *10 (Aug. 11, 1993), citing *State v. Gingell*, 7 Ohio App.3d 364, 365 (1st Dist.1982).

{¶19} While Mr. Gary elected not to testify at trial, the State played a nearly two-hour video recording of the interview at the police station. While he steadfastly denied touching B.S. during their encounter despite intense questioning by the officer, the interview is filled with statements which the jury could have found to be evasive, self-serving, grandiose, narcissistic and incredible.

{¶20} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Gary guilty of rape.

{¶21} As part of his manifest weight assignment of error, Mr. Gary argues that the verdicts of not guilty on the sexual battery count and guilty on the rape count were inconsistent. However, an appellant's "assignment of error provides a roadmap for our review and, as such, directs our analysis of the trial court's judgment." *See State v. Brown*, 9th Dist. No. 23637,

2008-Ohio-2670, ¶ 24, citing *Hamlin-Scanlon v. Taylor*, 9th Dist. No. 23773, 2008-Ohio-411, and App.R. 16. Therefore, as Mr. Gary has not separately assigned as error his argument as to inconsistent verdicts, we decline to address it here. *See* App.R. 12(A)(2), 16(A). Accordingly, Mr. Gary's second assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT GRANTING [MR.] GARY'S MOTION FOR A MISTRIAL.

**{¶22}** In his first assignment of error, Mr. Gary argues that the trial court erred in not granting his motion for a mistrial. We disagree.

**{¶23}** "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." *State v. Wooden*, 9th Dist. No. 21138, 2003-Ohio-1917, ¶ 33, quoting *Wadsworth v. Damberger*, 9th Dist. No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000). "Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion." *State v. McKinney*, 9th Dist. No. 24430, 2009-Ohio-2225, ¶ 20, citing *State v. Stewart*, 111 Ohio App.3d 525, 533 (9th Dist.1996).

**{¶24}** Here, just prior to trial, Mr. Gary moved to exclude evidence of his prior conviction for importuning, and the trial court granted the motion conditioned on Mr. Gary not testifying. Although Mr. Gary did not testify, during its instructions to the jury, the trial court referenced the prior conviction:

THE COURT: * * * Defendant does not testify: it is not necessary that the Defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that he did testify must not be considered for any purpose.

[PROSECUTOR]: Your Honor, I believe –

THE COURT: Since the Defendant did not –

[PROSECUTOR]: Oh, okay, never mind.

THE COURT: – testify I'm not going to read you the other – it's not relevant to this particular case. Use of a prior conviction, credibility –

[PROSECUTOR]: Um, Your Honor –

THE COURT: Also that would only apply if a Defendant had testified in this case and that again does not apply in this particular case. Expert witnesses:* * *."

{¶25}  After the court finished reading the jury instructions, a discussion was held out of the presence of the jury, during which the defense moved for a mistrial based upon the court commencing recital of instructions pertaining to Mr. Gary's prior conviction and based upon the full display of these instructions to the jury on a large television screen.  After the trial court sent the jury back to deliberate, defense counsel again moved for a mistrial.

{¶26}  The trial court clarified for the record what had transpired during the instructions:

THE COURT: All right, as I don't really know what the jury saw or didn't see and certainly what they've received in writing does not contain these two paragraphs that indicate that the Defendant – in fact, I'll read for the Record what the two paragraphs say that were not provided to the jury in the written instructions.  For the Record it says ["]Defendant testifies: the testimony of the Defendant is to be weighed by the same rules that apply to other witnesses.  Use of prior conviction, credibility: evidence was received that the Defendant was convicted of importuning.  That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in accordance with that character.  If you find that the Defendant was convicted of importuning you must consider that evidence only for the purpose of testing the Defendant's credibility and the weight to be given to Defendant's testimony.  It cannot be considered for any other purpose.["]  Those two paragraphs were included in the original jury instruction. As I indicated they were not provided to the jury in their written instructions and they were not read to the jury.  They were projected on a television screen momentarily.  I don't know how much they saw or didn't see.  I can't speak for the jury.  I think I am going to give them a cautionary instruction that if they did see anything in regard to the Defendant testifying they should disregard that so I'm going to bring them back out.  The motion for mistrial is overruled and I'll give them that instruction.

{¶27} Thereafter, the court caused the jury to return to the courtroom and provided the following instruction:

> THE COURT: * * * When I was reading the instructions and they were projected on the screen you heard me start to read to you about if the Defendant does testify. As I told you at that time that does not apply in this case because he did not testify. There is no instruction in your jury instruction about when the Defendant does testify so anything you saw or thought you heard or thought you saw you can disregard in regard to the Defendant testifying. Because none of that is relevant, obviously he didn't testify. There's nothing that you need to know about what happens when a Defendant testifies. So your instruction doesn't include anything on that, it does include, you know, if the Defendant chooses not to testify and the weight or consideration you can give to that or lack thereof is included in your instructions so you can refer to that and that's the only thing that applies about the Defendant and his testimony. * * *

{¶28} On appeal, Mr. Gary argues that the trial court erred in not granting his motion for a mistrial and cites *State v. Allen*, 29 Ohio St.3d 53 (1987), in support of his argument. In *Allen*, the Ohio Supreme Court found that the trial court erred in failing to declare a mistrial when the existence of the defendant's prior convictions, which were not elements of the charged offense, was revealed to the jury. *Id.* at 54-55. In making this determination, the Court stated:

> The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. For this reason, we do not consider the trial court's admonitions to the jury that appellee's prior convictions are immaterial to his guilt of the present charge sufficient to cure the error. Nor are we persuaded that appellee would have been convicted absent the disclosure to the jury of appellee's two prior convictions.

*Id.* at 55.

{¶29} However, subsequent to *Allen*, the Court upheld convictions where the witnesses' immaterial references to the defendants' prior arrests or offenses were "fleeting" or "brief and isolated." *See State v. Garner*, 74 Ohio St.3d 49, 59 (1995) (trial court did not err in denying defendant's motion for mistrial where the testifying officer's reference to defendant's prior arrests "was fleeting and was promptly followed by a curative instruction"); *State v. Trimble*, 122

Ohio St.3d 297, 321 (reference to defendant "having a prior conviction" was "a brief and isolated remark that was followed by a curative instruction." The court also noted that the remark did not necessitate a mistrial where there was overwhelming evidence of defendant's guilt).

{¶30} Although we would not characterize the evidence as to Mr. Gary's guilt as "overwhelming," we would characterize the reference to Mr. Gary's prior conviction as "fleeting." The trial court described for the record that the instructions at issue were on the screen "momentarily." Further, the trial court did not read these instructions in full, but rather referenced "[u]se of [a] prior conviction," without expounding upon it. Then the court immediately instructed the jury that the instruction was inapplicable. The instructions at issue were deleted from the written instructions that were presented to the jurors for their use during deliberations, and the trial court again instructed the jury that no instructions that they may have heard or read on the screen pertaining to the defendant testifying were relevant in this case and should be disregarded.

{¶31} Based upon the record before us, we conclude that the trial court's reference to a prior conviction was "fleeting" and, based upon the facts and circumstances of this case, the trial court did not abuse its discretion in denying the motion for a mistrial. Accordingly, Mr. Gary's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

TRIAL COUNSEL WAS INEFFECTIVE FOR NOT INSISTING ON AN UP-TO-DATE MENTAL HEALTH EVALUATION BEFORE TRIAL; FOR NOT DEMANDING REDACTION OF THE POLICE INTERVIEW OF MR. GARY; AND FOR NOT REQUESTING AN INSTRUCTION ON LESSER-INCLUDED-OFFENSE.

{¶32} In his third assignment of error, Mr. Gary contends that his trial counsel was ineffective by (1) failing to insist on an updated mental health evaluation prior to trial, (2) not

requesting a redaction of the police interview of Mr. Gary to remove the officer's references to B.S.'s truthfulness, and (3) failing to request a jury instruction that sexual battery is a lesser included offense of rape. We disagree.

{¶33} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial [.]" *Strickland* at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. With this standard in mind, we will examine separately the respects in which Mr. Gary claims that his trial counsel was ineffective.

Mental Health Examination

{¶34} Prior to sentencing, Mr. Gary's trial counsel requested a mental health examination be performed on Mr. Gary, because trial counsel perceived him to be confused as to the outcome of the trial. In his memorandum in support of this motion, defense counsel stated:

> [Mr. Gary] has always appeared to counsel to have a clear understanding of the nature of the legal proceedings against him, however, during a telephone call to counsel's office on January 13, 2012, [Mr. Gary] stated to counsel's secretary that he thought he had won the case and was unclear as to why he was still in jail and what the sentencing hearing * * * had been scheduled for.

{¶35} However, Mr. Gary argues that trial counsel was ineffective for failing to request an updated health examination *prior to trial*, and contends that the need for such an evaluation "would have been apparent simply from talking to him." Despite appellate counsel's assessment of the immediate and obvious need for such an evaluation prior to trial, there is nothing that suggests that trial counsel observed such a need prior to his request. Further, given the strong presumption that defense counsel's conduct fell within the wide range of reasonable, professional assistance and defense counsel's statement that Mr. Gary had "always appeared to counsel to have a clear understanding" of the proceedings prior to sentencing, we cannot say that defense counsel's deficiency in this respect, if any, was so serious as to "deprive Mr. Gary" of counsel as guaranteed by the Sixth Amendment. *See Strickland* at 687.

{¶36} Further, as referenced earlier, the video tape recording of Mr. Gary's interview by the police was available to the trial court. It showed Mr. Gary fully engaged in a spirited dialogue with the officer. Despite the officer's best efforts to guide Mr. Gary into an admission of having violated B.S., he limited or denied his involvement, frequently disagreeing with the premises upon which the officer's questions were based. The video recorded interview taken immediately after the reporting of the incident tends to support trial counsel's observation that Mr. Gary had a clear understanding of the nature of the proceedings.

{¶37} Accordingly, we cannot say that defense counsel was ineffective for failing to request a mental health evaluation prior to trial.

Video Interview

{¶38} Mr. Gary further argues that his trial counsel was ineffective for failing to request redaction of his video interview to remove references made by Officer McConnell in regard to B.S.'s truthfulness. During the video, the officer repeatedly insists that the victim was not lying

and that people with her level of cognition are unable to lie. Mr. Gary contends that the playing of these portions of the interview prejudiced him because there was little evidence of digital penetration other than B.S.'s testimony. Thus, Mr. Gary maintains that the jury may have taken the officer's statements as supportive of B.S.'s credibility.

{¶39} However, it appears from the record that the defense actually embraced the playing of the unredacted video recording. Rather than move to redact, much of defense counsel's cross-examination drew attention to and focused upon the "techniques" employed by Officer McConnell during his interview of Mr. Gary. The tactical approach was to demonstrate to the jury that, despite the use of these techniques, (including the suggestion that B.S. could not lie) Mr. Gary at all times during the interview denied touching her. Based upon the record, it appears that defense counsel attempted to utilize the officer's statements of truthfulness as a trial tactic. *See State v. Clayton*, 62 Ohio St.2d 45, 49 (1980) (holding that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel.)

{¶40} Accordingly, we cannot say that defense counsel was ineffective for his failure to request redaction of the officer's references pertaining to B.S.'s truthfulness from the video of the interview.

Sexual Battery Instruction

{¶41} Lastly, Mr. Gary argues that trial counsel was ineffective for failing to request the trial court to instruct the jury that sexual battery is, in the abstract, a lesser included offense of rape. We note that Mr. Gary has again incorporated in his argument a lengthy discussion regarding inconsistent verdicts which he had set forth in the body of his brief pertaining to his manifest weight assignment of error. Mr. Gary has nowhere in his brief raised the issue of inconsistent verdicts as a separate assignment of error. As Mr. Gary's assignment of error

"provides a roadmap for our review" and "directs our analysis of the trial court's judgment," we will confine our analysis to his argument that his trial counsel was ineffective for failing to request a jury instruction that sexual battery is abstractly a lesser included offense of rape. *See Brown*, 2008-Ohio-2670 at ¶ 24; *see also* App.R. 16.

**{¶42}** Mr. Gary essentially argues that trial counsel should have requested the court to instruct the jury that the elements of a rape include all of the elements of a sexual battery. *See State v. Wilkins*, 64 Ohio St.2d 382 (1980), syllabus; *see also State v. Ortiz*, 185 Ohio App.3d 733, 2010-Ohio-38, ¶ 15-18.

**{¶43}** However, "[t]rial strategy 'must be accorded deference and cannot be examined through the distorting effect of hindsight.'" *State v. Owens*, 9th Dist. No. 25872, 2012-Ohio-3667, ¶ 15, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-4815, ¶ 115. The jury was instructed as to the definition and the elements of rape and of sexual battery. Mr. Gary has not indicated that the trial court erred in instructing the jury on the elements of either offense. Additionally, Mr. Gary has directed us to no authority that would support the premise that trial counsel should have further requested the instruction that he has proposed. Therefore, Mr. Gary has failed to demonstrate that trial counsel's performance was deficient in this regard. *See Strickland* at 687.

**{¶44}** Accordingly, we cannot say that defense counsel was ineffective for failing to request the trial court to instruct the jury that the elements of rape include all of the elements of a sexual battery, and his third assignment of error is overruled.

### III.

**{¶45}** Mr. Gary's assignments of error are overruled. The judgment of the Wayne County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

CLARKE W. OWENS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.