[Cite as *State v. Ford*, 2019-Ohio-2570.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,             :

                                No. 107541

    v.                              :

JEREMIAH FORD,                          :

    Defendant-Appellant.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620606-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Hannah Smith, Assistant Prosecuting Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Jeremiah Ford ("appellant"), brings the instant appeal challenging his convictions for sexual battery. Appellant argues that his

convictions are against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant appeal arose from an incident that occurred between appellant and the victim, F.C., on July 30, 2017. Appellant and F.C. attended middle school and high school together and were friends at school. They did not stay in touch after high school, and had not been in contact with one another for approximately ten years prior to July 2017.

{¶ 3} The victim posted a message on Facebook regarding how nice the weather was and asking if any of her friends wanted to hang out. Appellant responded to the victim's post, and they decided to go to a park. The victim's daughter accompanied the victim and appellant to the park.

{¶ 4} At some point, the victim, her daughter, and appellant left the park, got ice cream, and returned to the park. Later in the evening, they got dinner together. After dinner, they went to a Wal-Mart store to purchase movies to watch. The victim invited appellant to watch the movies at her apartment.

{¶ 5} As they were watching a movie, and after the victim's daughter fell asleep, appellant engaged in sexual conduct with the victim. The parties disputed whether or not the sexual conduct was consensual. According to the victim, appellant engaged in sexual acts — digital penetration, oral sex, and vaginal intercourse — against her will. Appellant, on the other hand, asserted that the victim initiated the sexual conduct and that the sexual encounter was consensual.

{¶ 6} The following day, July 31, 2017, the victim felt "violated" and spoke with a friend about what transpired the prior evening with appellant. The victim's friend, C.F., opined that appellant's conduct constituted rape. Thereafter, the victim filed a police report and was treated at Fairview Hospital where a rape-kit examination was conducted.

{¶ 7} In Cuyahoga C.P. No. CR-17-620606-A, the Cuyahoga County Grand Jury returned a four-count indictment on August 28, 2017, charging appellant with three counts of rape, with notice of prior conviction and repeat violent offender specifications, and one count of kidnapping, with sexual motivation, notice of prior conviction, and repeat violent offender specifications. Appellant was arraigned on August 31, 2017. He pled not guilty to the indictment.

{¶ 8} On September 18, 2017, the trial court referred appellant to the court psychiatric clinic for an evaluation pursuant to R.C. 2945.371 for competency to stand trial and sanity at the time of the incident. The court psychiatric clinic determined that appellant was competent to stand trial. The parties stipulated to the court psychiatric clinic's report during a pretrial hearing on October 23, 2017.

{¶ 9} On June 6, 2018, appellant waived his right to a jury trial and elected to try the case to the bench. A bench trial commenced on June 6, 2018.

{¶ 10} After the state rested, defense counsel moved for a Crim.R. 29 judgment of acquittal. Regarding the rape offenses charged in Counts 1, 2, and 3 of the indictment, the state requested that the trial court also consider the lesser-included offense of sexual battery, third-degree felony violations of R.C.

2907.03(A)(1). The trial court permitted the state to proceed on Counts 1, 2, and 3 with the offenses of sexual battery. Defense counsel argued that Count 4 should proceed as the lesser-included offense of abduction rather than the kidnapping offense charged in the indictment. The trial court agreed. (Tr. 192-193.)

{¶ 11} The trial court returned its verdict on June 11, 2018. On Counts 1 and 3, the trial court found appellant guilty of the lesser-included offense of sexual battery. The trial court found appellant not guilty on the underlying notice of prior conviction and repeat violent offender specifications. The trial court found appellant not guilty on Counts 2 and 4.

{¶ 12} The trial court held a sentencing hearing on July 18, 2018. The trial court sentenced appellant to community control sanctions for a term of two years on each count, under the probation department's "mental health/developmental disabilities unit." The trial court ordered appellant to have no contact with the victim. Finally, the trial court determined that appellant was a Tier III sex offender.

{¶ 13} On August 14, 2018, appellant filed the instant appeal challenging the trial court's judgment. He assigns one error for review:

I. The trial court's verdict is against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 14} In his sole assignment of error, appellant argues that his convictions for sexual battery are against the manifest weight of the evidence.

{¶ 15} Initially, we note that appellant's sole assignment of error combines and confuses the issues of sufficiency of the evidence and manifest weight of the evidence. *See State v. Adhikari*, 2017-Ohio-460, 84 N.E.3d 282, ¶ 10 (8th Dist.). For instance, appellant argues that the "inconsistencies [in the victim's testimony] make it impossible for a finder of fact to accept her story as true, finding that [appellant] knowingly coerced her to engage in sexual conduct, without any reasonable doubts. R.C. 2907.03(A)(1)." Appellant's brief at 12.

{¶ 16} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387.

> Sufficiency asks whether, when "viewed in a light most favorable to the prosecution," "a rational trier of fact" could find that the state met its burden of production on each element of the offense with the evidence admitted at trial? A manifest weight challenge asks whether, viewed from the perspective of a "thirteenth juror," it is apparent that the jury has clearly "lost its way" due to "misrepresentation or misapplication of the evidence."

(Citations omitted.) *State v. Curry*, 8th Dist. Cuyahoga No. 105203, 2018-Ohio-4771, ¶ 21.

{¶ 17} Appellant does not raise separate assignments of error challenging the sufficiency of the evidence and the manifest weight of the evidence, as required by

App.R. 16(A)(7). *See Cleveland v. Hall*, 8th Dist. Cuyahoga No. 101820, 2015-Ohio-2698, ¶ 14, citing App.R. 16(A)(7) (pursuant to App.R. 16(A)(7), this court overruled an appellant's assignment of error relating to a sufficiency challenge because the appellant did not make a specific argument regarding why the convictions were not supported by sufficient evidence and only addressed the issues relating to the manifest weight challenge).

{¶ 18} Nevertheless, appellant's sole assignment of error primarily focuses on whether his convictions were against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, "manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. Accordingly, a determination that a conviction is supported by the weight of the evidence is dispositive of, and will subsume the issue of sufficiency. *Braxton* at *id.*; *State v. Mock*, 2018-Ohio-268, 106 N.E.3d 154, ¶ 44 (8th Dist.).

## A. Coercion

{¶ 19} Appellant argues that "[t]he strong weight of the evidence suggests that [appellant] did not *knowingly coerce* [the victim] to engage in manual and oral sexual conduct." (Emphasis sic.) Appellant's brief at 10. Appellant does not dispute that he engaged in sexual conduct with the victim. However, appellant argues that he believed the sexual conduct was "entirely consensual." Appellant's reply brief

at 1.  Appellant explains that "there had been no reason for [him] to believe during sex with [the victim] that he was coercing her to do anything at all."  Appellant's reply brief at 5.  Finally, appellant contends that "[t]he evidence admitted at trial strongly suggests that [the victim] did not share any sexual reservations with [him] until almost one full day had passed after the sexual conduct occurred."  Appellant's brief at 11.  After reviewing the record, we find that appellant's arguments are misplaced and unsupported by the record.

{¶ 20} Appellant was convicted of sexual battery in violation of R.C. 2907.03(A)(1), which prohibits a person from engaging in sexual conduct with another when the offender knowingly coerces the other to submit by any means that would prevent resistance by a person of ordinary resolution.  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).

{¶ 21} The Revised Code does not define "coercion."  The commentary to R.C. 2907.03, however, provides that sexual conduct by coercion is somewhat broader than sexual conduct by force.  *State v. Ndoji*, 8th Dist. Cuyahoga No. 90181, 2008-Ohio-3551, ¶ 15; *State v. Wilkins*, 64 Ohio St.2d 382, 386, 415 N.E.2d 303 (1980) ("coercion for purposes of sexual battery is broader than the force required to prove rape and necessarily includes all uses of force. Force is not required to prove coercion.").

{¶ 22} In *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), the Ohio Supreme Court described the term "coercion" as follows:

> "Coercion" may include a compulsion brought about by moral force or in some other manner with or without physical force. * * *
>
> These judicial definitions of coercion correspond to the common use of the word. Webster's Third New International Dictionary defines coercion as "the act of coercing: use of physical or moral force to compel to act or assent," and to coerce as "to restrain, control or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation)."
>
> The essential characteristic of coercion which emerges from these definitions is that force, threat of force, strong persuasion or domination by another, necessitous circumstances, or some combination of those, has overcome the mind or volition of the [victim] so that [s]he acted other than [s]he ordinarily would have acted in the absence of those influences.

*Id.* at 136-137.

{¶ 23} Additionally, in *State v. Brooks*, 8th Dist. Cuyahoga No. 96552, 2011-Ohio-6643, this court reiterated the Twelfth District's explanation of the element of coercion:

> "Coercion for purposes of sexual battery has been defined as 'to compel by pressure.' *See In re Jordan*, [9th Dist. Lorain No. 01 CA007804, 2001 Ohio App. LEXIS 4013 (Sept. 12, 2001)]. Webster's Third New International Dictionary (1993) defines 'to coerce' in relevant part as 'to restrain, control, or dominate, nullifying the individual will or desire,' 'to compel to an act of force, threat, or other pressure,' and 'to bring about * * * by force, threat, or other pressure.' *Id.* at 439. Black's Law Dictionary (5th Ed.1979), in turn states that coercion 'may be actual, direct, or positive, as where physical force is used to compel act[s] against one's will, or implied, legal, or constructive, as an where one party is constrained by subjugation to [an]other to do what his free will would refuse.' *Id.* at 234."

*Brooks* at ¶ 34, quoting *In re J.A.S.*, 12th Dist. Warren No. CA2007-04-046, 2007-Ohio-6746, ¶ 19.

{¶ 24} In *Wilkins*, 64 Ohio St.2d 382, 415 N.E.2d 303, the Ohio Supreme Court held that sexual battery, as defined in R.C. 2907.03(A)(1), may be a lesser-included offense of rape, as defined in R.C. 2907.02(A)(1). *Id.* at syllabus. The court explained,

> it is possible for a person to compel another to engage in sexual conduct by force or threat of force knowingly but not purposely. A person could subjectively believe that there is consent where there is none, and in using his strength could coerce another to submit by force. In such a case he would not intend to do the prohibited act. However, if he is aware of the circumstances that probably exist and that under such circumstances there probably is no consent he would have knowingly coerced another to engage in sexual conduct by force. Consequently, sexual battery as defined in R. C. 2907.03(A)(1) may be a lesser included offense of rape as defined in R. C. 2907.02(A)(1) where force is present.

*Id.* at 386-387.

{¶ 25} In *State v. Frigic*, 8th Dist. Cuyahoga No. 61509, 1992 Ohio App. LEXIS 6598, 11 (Dec. 31, 1992), this court explained,

> sexual battery is properly considered as a lesser offense of rape when the evidence demonstrates either that the defendant knowingly coerced another to engage in sexual conduct by force, or that the defendant misunderstood a refusal to consent. Sexual battery is not properly considered when the state's evidence demonstrates that the victim gave absolutely no indication of valid consent, and the defendant wholly denies that any sexual conduct occurred.

*Id.* at 14.

{¶ 26} In the instant matter, appellant does not deny that sexual conduct occurred with the victim. Furthermore, the evidence — the victim's testimony —

demonstrates that appellant knowingly coerced the victim to engage in sexual conduct by force. Accordingly, the trial court properly considered the lesser offense of sexual battery.

{¶ 27} As noted above, the victim testified that appellant digitally penetrated her with his fingers, performed oral sex, and had vaginal intercourse with her against her will. The victim testified that appellant got on top of her, forced his hands down her pants, and forced his fingers into her vagina. When appellant got on top of her and forced his hands down her pants, she said "no," told appellant "stop" and "get off," and tried to pull his hands away approximately five times. (Tr. 35-36.) She explained that she was unable to push him off of her because "he was forcing [his hands down her pants] and he wouldn't stop." (Tr. 36.) The victim testified that she is 5'2" and weighs 125 pounds. (Tr. 34.) She explained that appellant was "much bigger" than her.

{¶ 28} After forcing his fingers into her vagina, appellant forced his mouth onto her vagina and performed oral sex. She continued to tell appellant "no" and also asserted that she was on her period. She did not want him to perform oral sex. (Tr. 52.)

{¶ 29} The victim was fearful of appellant based on what he said earlier in the day and also because "how [appellant] was so forceful on [her] when [she] kept telling him to stop and he wouldn't stop. [The victim] was thinking about that." (Tr. 83.)

{¶ 30} In *Frigic*, 8th Dist. Cuyahoga No. 61509, 1992 Ohio App. LEXIS 6598, the state's evidence demonstrated that

> the victim voluntarily went on a date with defendant, did not object to defendant kissing her on three separate occasions preceding the sexual conduct, but objected only when there were too many people around, and that [the victim] willingly went into the cabin of the boat with defendant and allowed him to kiss her, before defendant attacked her. Further, defendant acknowledged that sexual conduct had occurred, but he claimed that it was consensual. Accordingly, the evidence reasonably supports alternative conclusions that defendant knowingly, rather than purposely, coerced [the victim] to engage in sexual conduct by force, and that defendant was mistaken as to whether there was consent. Therefore, the trial court did not err in convicting defendant of sexual battery as a lesser included offense of rape.

*Id.* at 15-16.

{¶ 31} In the instant matter, the state's evidence demonstrated that the victim voluntarily spent the day with appellant, invited appellant to her apartment, and even agreed to let appellant give her a massage. However, when appellant got on top of her and forced his hands down her pants, the victim said "no" and told appellant to stop. The victim also said "no" when appellant started performing oral sex and she tried to push his head away from her vagina. (Tr. 95.) Appellant, on the other hand, acknowledged that the sexual conduct occurred, but he maintained that it was consensual. Accordingly, like *Frigic*, the evidence reasonably supports alternative conclusions that appellant (1) knowingly, rather than purposely, coerced the victim to engage in sexual conduct by force, and (2) appellant was mistaken as to whether there was consent. Therefore, the trial court did not err in considering or finding appellant guilty of sexual battery as a lesser included offense of rape.

{¶ 32} The victim's testimony, if believed, demonstrates that appellant compelled and/or coerced her to engage in sexual conduct by (1) actual physical force — getting on top of the victim, forcing his hands down her pants, forcing his fingers inside her vagina, and forcing his mouth onto her vagina, despite the fact that the victim said "no," "stop," and tried to resist appellant's actions — and (2) coercion through means other than force — the victim feared for her safety and the safety of her daughter based on appellant's statements about his criminal history, appellant's forceful actions, and his refusal to stop when she told him to do so several times.

{¶ 33} In *State v. Shank*, 9th Dist. Medina No. 14CA0090-M, 2016-Ohio-7819, the defendant-appellant was convicted of several lesser-included offenses of sexual battery. The victim testified that she did not engage voluntarily in sexual conduct with the defendant, and that she was scared of the defendant's size compared to her own. *Id.* at ¶ 14. On appeal, the Ninth District held that the defendant's sexual battery convictions, violations of R.C. 2907.03(A)(1), were supported by sufficient evidence. *Id.*, citing *State v. Ortiz*, 185 Ohio App.3d 733, 2010-Ohio-38, 925 N.E.2d 662, ¶ 15 (9th Dist.) (while rape under R.C. 2907.02(A)(2) requires a mens rea of purposely and proof of force, sexual battery under R.C. 2907.03(A)(1) requires a mens rea of knowingly and proof of coercion).

{¶ 34} In the instant matter, like *Shank*, the victim testified that she did not engage voluntarily in the sexual conduct with appellant, and that she was scared for the safety of her daughter and herself based on appellant's background and criminal

history, his forceful actions, and the fact that he refused to stop. As noted above, the victim testified that appellant is much bigger than she is. When appellant got on top of her and forced his hands down her pants, and when appellant forced his mouth onto her vagina, the victim repeatedly said "no." The victim also attempted to physically resist appellant by pulling his hands away and pushing his head away from her vagina. However, she was unsuccessful in doing so.

{¶ 35} For all of the foregoing reasons, we find that the weight of the evidence supports the trial court's determination that appellant knowingly coerced the victim into digital penetration on Count 1 and oral sex on Count 3.

### B. Manifest Weight

{¶ 36} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 37} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 38} In support of his manifest weight challenge, appellant argues that the victim's testimony regarding the events that transpired on July 30 and 31, 2017, was inconsistent and contradictory, and inconsistent with the statements she made to the police and SANE Nurse Laura Gaertner. Specifically, appellant contends that the victim provided inconsistent and contradictory testimony regarding the timing of her conversation with her friend, C.F., following the incident, and the statements she made to the police when she filed a police report.

{¶ 39} First, regarding the victim's testimony about her conversation with C.F., the victim initially testified that at some point after appellant returned her apartment keys and left the apartment the following morning, she contacted her best

friend, C.F., via telephone and told her what transpired with appellant. (Tr. 41.) After speaking with C.F., the victim took a shower and went to C.F.'s house. She met with C.F. around 6:00 p.m. on July 31, 2017.

{¶ 40} The victim also spoke with appellant on July 31, 2017. They communicated via text message and also over the phone. Appellant and the victim exchanged more text messages and phone calls that evening. Her last communication with appellant occurred at 10:33 p.m. on July 31. The victim testified that she was not with C.F. at this time, she had not gone to C.F.'s house, and she had not spoken with C.F. at the time she exchanged the text messages and phone calls with appellant. (Tr. 54.)

{¶ 41} Regarding the timing of her communications with C.F., the victim explained that the incident with appellant happened in the early morning hours on July 31, 2017. Later in the day, she communicated with appellant via text and phone calls. The victim testified that she went over to C.F.'s house the next day, Tuesday, August 1, 2017.

{¶ 42} On cross-examination, the victim testified that she called C.F. "a few hours" after appellant returned her keys. (Tr. 87.) She confirmed that the communications with appellant on the evening of July 31, 2017, took place after she spoke with C.F. (Tr. 89.) C.F. opined that what had transpired between appellant and the victim was "definitely rape." (Tr. 87.)

{¶ 43} C.F. testified that on July 31, 2017, she spoke with the victim on the phone. C.F. explained that the victim called her at a time that C.F. considered to be

"early." C.F. typically wakes up no earlier than 10:00 a.m. C.F. opined that the victim called her sometime between 7:00 and 10:00 a.m. on July 31. C.F. confirmed that at the time that the victim called her, appellant had left the victim's apartment.[1] Based on her conversation with the victim, C.F. advised the victim to file a police report. C.F. drove to the victim's apartment, picked her up, and drove her to the police station.

{¶ 44} On cross-examination, the victim testified that a few hours after appellant returned her keys, she called her friend C.F. (Tr. 87.) C.F. told her what occurred with appellant was definitely rape.

{¶ 45} Second, appellant argues that the victim's trial testimony contradicted the statements she initially made to the police when she filed a police report. Appellant contends that although the victim told the police that she did not want to "rush" things with appellant, the victim was unable to recall whether she made this statement at trial. Appellant emphasizes that the statement about not wanting to "rush" things "bolstered elements of [appellant's] story" and was "consistent with [appellant's] initial belief * * * that [the victim] was hurt because she regretted moving so quickly with him." Appellant's brief at 13.

{¶ 46} The victim testified on cross-examination that she recalled telling the police on August 2, 2017, that she told appellant "I would like to get to know you better." (Tr. 80.) She did not recall telling police, however, that she told appellant

---

[1] It is unclear whether C.F. was referring to appellant leaving the victim's apartment after waking up or after returning her apartment keys.

"don't rush it."  On redirect examination, the victim explained that she did not recall saying that she did not want to rush things with appellant.  (Tr. 93.)  Appellant testified on cross-examination that the victim told him she felt like they were rushing things and she did not want things to go any farther.  (Tr. 231.)

{¶ 47} Appellant also argues that the victim's trial testimony contradicted the statements she initially made to the police regarding whether or not she told appellant to perform and/or permitted appellant to perform oral sex.  The record reflects that the following exchange took place between defense counsel and the victim on cross-examination:

> [DEFENSE COUNSEL]: Do your recall saying to the police: "I let him give me oral sex?  I let him give me oral sex"?
>
> [VICTIM]: Yeah — no, I don't — yeah.
>
> [DEFENSE COUNSEL]: Right?  So, "I let him give me oral sex." Correct?  How long would you say that that lasted?
>
> [VICTIM]: Maybe like a few minutes.
>
> [DEFENSE COUNSEL]: Okay, and then do you recall saying to the police, "I let him take me in the bedroom?"
>
> [VICTIM]: Correct.
>
> [DEFENSE COUNSEL]: Okay.  So, "I let him give me oral sex." Correct?
>
> [VICTIM]: Correct.
>
> [DEFENSE COUNSEL]: And that was without yelling or screaming. Correct?
>
> [VICTIM]: Correct.
>
> [DEFENSE COUNSEL]: Without saying, "No," at that point.  Correct?

[VICTIM]: Correct.

[DEFENSE COUNSEL]: So without yelling, screaming or saying, "No," at that point you indicated to the police you let him give you oral sex. Correct?

[VICTIM]: Correct.

(Tr. 83-84.)

{¶ 48} Defense counsel continued on cross-examination,

[DEFENSE COUNSEL]: * * * you walked up to the police and you said, "Hey, I let him have oral sex with me.["] * * *

[VICTIM]: Yeah.

(Tr. 87-88.)

{¶ 49} Subsequently, on redirect examination, the victim testified that she told appellant "no" and attempted to push his head away when he was performing oral sex. The following exchange occurred between the prosecution and the victim on redirect examination:

[PROSECUTOR]: * * * after he forced his hands down your pants and digitally penetrated you and you felt violated, the defense kept saying, you know, you let him perform oral sex on you. When you say, "let him," did you punch him?

[VICTIM]: No, that's — he was like forcing his head and I just kept saying, "No," pushing him away saying, "I'm on my period. No, I'm on my period."

(Tr. 93-94.)

{¶ 50} The victim acknowledged that she agreed to let appellant give her a massage. However, she confirmed that when appellant put his hands down her pants and got on top of her, the victim said "no." (Tr. 95.) The victim also said "no"

when appellant started performing oral sex and she tried to push his head away from her vagina.

{¶ 51} Appellant testified on cross-examination that he performed oral sex to the victim. He asserted that he was not aware that she was on her period. According to appellant, the oral sex occurred in the bedroom, not on the couch in the living room as the victim testified. Appellant stated that the victim's hands were on his head when he performed oral sex.

{¶ 52} In addition to the victim's purportedly inconsistent and contradictory testimony, appellant argues that the victim's testimony about feeling coerced to engage in sexual conduct with appellant was "starkly contradicted by the other events of the day" and "inconsistent with the remarkable trust that she showed toward [appellant] throughout the day." Appellant's brief at 14.

{¶ 53} The victim testified that when she was at the park with appellant, appellant spoke about his criminal history and things he had done in the past that she found to be disturbing. She explained that appellant "explained a lot of his past and things that he has done or what he's still doing and stuff like that[.]" (Tr. 57.) The information about appellant's past and criminal history caused the victim to think and worry about the safety of her daughter. After learning this information, the victim feared appellant and was unsure about what he was capable of.

{¶ 54} On cross-examination, the victim asserted that when they were at the park, she asked appellant what he had been up to and what had been going on since high school. In response, appellant stated, "he was just telling me how he was a

bigtime drug dealer; sold some drugs.  He got into a lot of trouble with drugs.  And then he was telling me how he had an altercation with someone where he wanted to get somebody killed before, but by the grace of God he chose not to get the person killed and that didn't happen." (Tr. 66-67.)

{¶ 55} In this appeal, appellant argues that the victim's testimony that she felt coerced to engage in the sexual conduct with appellant based on (1) appellant's criminal history, and (2) the alleged risk that appellant posed to the safety of the victim and her daughter is inconsistent with and contradicted by the victim's actions and the events that transpired throughout the course of the day.  Regarding the victim's assertion that she felt coerced based on appellant's criminal history, appellant emphasizes that he told the victim at the park that he had been recently released from prison for selling drugs, and after learning this information, the victim still spent the rest of the day with him.  Regarding the victim's assertion that she felt coerced based on the risk or threat appellant posed to her and her daughter, appellant emphasizes that the victim let appellant drive her and her daughter around — without a car seat for the daughter and even after appellant consumed alcohol at dinner — the victim and her daughter ate dinner with appellant, and the victim invited appellant to her house.

{¶ 56} The victim acknowledged that after appellant told her about his criminal history and things he had done in the past, she did not ask somebody else for a ride home from the park, nor did she use her cell phone to call a friend.  Similarly, the victim acknowledged that she did not ask anyone for help at the

restaurant or Wal-Mart. Rather, the victim continued to spend time with appellant. (Tr. 69.) The victim went as far as stating that she and appellant were having fun picking out movies. Nevertheless, she explained that appellant's statements about his past were still in the back of her mind. (Tr. 73.)

{¶ 57} Although the victim found appellant's statements about his past and criminal history to be disturbing, and kept these statements in the back of her mind, the victim testified that she was not in fear of appellant at the park, at the ice cream shop, at the restaurant, or at Wal-Mart. On redirect examination, the victim testified that she felt safe and comfortable with appellant at the park, at the restaurant, at Wal-Mart, and even at the time when they arrived at her apartment. (Tr. 96-97.) The victim testified that other than referencing his past and criminal history, appellant had not given her any indication or reason to be fearful of him. (Tr. 97.)

{¶ 58} She started to become fearful of appellant "when I seen how he wasn't stopping and like when he was getting on top of me and wasn't stopping that's when he began to feel fearful." (Tr. 97.) She felt comfortable with appellant during the day; it was not until appellant started touching her and kept going when she said no that she began to feel uncomfortable.

{¶ 59} The victim asserted that the entire time that appellant was performing the sexual acts — not the entire time they were together during the day — she was fearful for her daughter and was "mainly thinking about my daughter since she was in the house." (Tr. 100.)

{¶ 60} Appellant testified on cross-examination that he talked about his criminal history at the park and notified the victim that he had just been released from jail. The victim did not seem scared when he told her about his criminal history, nor did the victim appear to be afraid of him when they were picking out movies at Wal-Mart.

{¶ 61} In support of his manifest weight challenge, appellant directs this court's attention to *State v. Moore*, 2018-Ohio-1825, 112 N.E.3d 76 (8th Dist.). In *Moore*, the defendant-appellant challenged his sexual battery conviction on both sufficiency and manifest weight grounds. The defendant-appellant argued, in a sufficiency context, that the state failed to prove the elements of "knowingly coerce."

{¶ 62} On appeal, this court held that the defendant-appellant's conviction for sexual battery was against the manifest weight of the evidence. In reaching this conclusion, this court explained that (1) the victim proffered inconsistent and contradictory testimony regarding the events that transpired throughout the course of the entire evening, (2) the victim provided conflicting testimony regarding "when and where oral sex was offered and performed," (3) the victim's trial testimony was vastly different than the statement she provided to the SANE nurse the day after the alleged rape, (4) the victim was unable to remember the nature of events surrounding the sexual assault, (5) although the victim was unable to remember simple details regarding the sexual assault or the sequence of events, she "was able to vividly, clearly, and concisely recall and testify to the exact words and phrases [the defendant] used the entire evening," and (6) there was no DNA evidence

corroborating the victim's testimony or linking the defendant to the alleged offenses. *Id.* at ¶ 43-46.

{¶ 63} In the instant matter, appellant argues that the victim, like the victim in *Moore*, provided inconsistent and contradictory statements to the police and testimony at trial regarding (1) whether she let appellant perform oral sex, (2) when she spoke with her friend, C.F., after the encounter with appellant, and (3) whether she sent an accusatory text message to appellant before or after speaking with C.F. and being falsely told that appellant had a prior conviction for rape.[2] The state, on the other hand, argues that *Moore* is distinguishable from this case because in *Moore*, the victim's testimony was conflicting and "vastly different" than the testimony of other witnesses, and there was no DNA evidence establishing that the defendant was present at the scene, much less that he engaged in sexual conduct with the victim. The state contends that in this case, the victim's testimony was corroborated by DNA evidence, the testimony of the SANE nurse, and appellant's text messages to the victim.

{¶ 64} After reviewing the record, we find this case to be distinguishable from *Moore*, 2018-Ohio-1825, 112 N.E.3d 76. In *Moore*, this court noted that the victim's trial testimony was "vastly different" than the narrative the victim provided to the SANE nurse. *Id.* at ¶ 44. In this case, the victim's testimony at trial was largely

---

[2] In the narrative the victim provided to the SANE nurse, the victim asserted that the police told her that appellant "has a record including rape." State's exhibit No. 14, page 12. Cleveland Police Detective Marcus Cloud confirmed at trial that appellant does not have a rape conviction on his record. (Tr. 175.)

consistent with the narrative she provided to Gaertner on August 3, 2017. The victim provided consistent testimony about when, where, and how the sexual acts occurred. Finally, unlike *Moore*, the DNA evidence was not inconsistent with the victim's testimony. Appellant's DNA was matched to a DNA profile recovered from "inside the crotch area" of the victim's underwear. (Tr. 127-128.)

{¶ 65} After reviewing the record, we are unable to conclude that the trial court lost its way in weighing the evidence and concluding that appellant was guilty of the sexual battery offenses on Counts 1 and 3. We acknowledge that some aspects of the victim's testimony, including the timing of her conversation with C.F., were inconsistent and contradicted by other evidence. Nevertheless, the important aspects of the victim's testimony regarding the events surrounding the sexual encounter remained largely consistent over time.

{¶ 66} Appellant essentially argues that the victim did not question the encounter with appellant nor believe that she had been raped until she spoke with C.F. This argument is unsupported by the record.

{¶ 67} The victim testified that she "questioned" the events that occurred with appellant before speaking or meeting with C.F. (Tr. 55.) She explained why she questioned the events that transpired: "I told [C.F.] it wasn't like what you see in the movies like I get punched and choked out and got raped, it happened in a different way so I told her I wasn't even sure if it is rape or not I just know I felt violated by it. And then that's when she told me at the time that was definitely rape based on what I told her." (Tr. 55.)

{¶ 68} Although she was unsure whether appellant raped her before speaking with C.F., the victim confirmed that she told appellant "no" when he put his hands down her pants. (Tr. 56.) Regarding her assertion that she was not sure whether appellant raped her, the victim explained, "at the time I didn't feel like — at the time I was thinking I didn't know if it was rape because it wasn't like you normally see like a woman really getting hurt and beat up and then forced that way. But I knew I was violated so [C.F.] told me, 'Well, it's still rape based on what happened to you because you told him "No," and he wouldn't stop.'" (Tr. 56.)

{¶ 69} Accordingly, any inconsistencies in the victim's testimony regarding her conversations with C.F. or the time these conversations took place do not cast serious doubt on appellant's role in engaging in sexual conduct against the victim's will.

{¶ 70} We are also unable to conclude that appellant's convictions are against the manifest weight of the evidence based on the victim's testimony about whether or not she told police that she consented to the oral sex. As an initial matter, appellant assumes that by "letting" him perform oral sex, the victim gave him permission to do so, consented to him doing so, and/or wanted him to do so. This assumption is unsupported by the record.

{¶ 71} The victim consistently testified that she repeatedly told appellant "no" as he forced his hands down her pants, inserted his fingers into her vagina, and performed oral sex. The victim acknowledged that although she said "no" multiple times in the living room, she did not scream or yell during the encounter with

appellant.  Nor did she try to call 911 or a friend.  The victim also acknowledged that at some point during the encounter, she stopped telling appellant "no."  When appellant moved her from the living room into the bedroom, she did not continue to tell appellant "no."  The victim explained that she was thinking about what appellant had said earlier about his criminal background and things he had done in the past.  Based on this information, and the fact that appellant kept going and refused to stop when she said "no" multiple times, the victim testified that she feared for herself and her daughter, she did not know what would happen if she continued to resist, and she was in fear not knowing what appellant was capable of.

{¶ 72} The victim's testimony demonstrates that she did not want appellant to perform oral sex, she said "no" when he began to do so, and she unsuccessfully attempted to push his head away from her vagina.  The evidence does not indicate that she consented to the oral sex merely because she was unable to overpower appellant or because she did not yell, scream, or physically attack appellant when he began to do so.  Finally, the victim's testimony that she did not want appellant to perform oral sex is consistent with the narrative she provided to the SANE nurse.  This narrative provides, in relevant part, "[appellant] got my pants off.  He forced his face down there in my [vaginal] area, and I told him that I had started my period.  He didn't care.  He stayed down there."  (Tr. 142.)

{¶ 73} We also must note that not every aspect of appellant's testimony was consistent, believable, or supported by other evidence.  For instance, appellant testified that the victim never mentioned that she was on her period.  The victim, on

the other hand, testified that she told appellant she was on her period when he digitally penetrated her and performed oral sex.

{¶ 74} The victim's testimony about being on her period is supported by the SANE nurse's report. Gaertner's report provides, in relevant part,

> AT THE TIME OF THE ASSAULT/ABUSE:
> Patient Menstruating: Yes
> Tampon/Sanitary Pad Present: Yes, where it is now: garbage
>
> * * *
>
> AT TIME OF EXAM:
> Patient was Menstruating: Yes
> Tampon/Sanitary pad present: No.

State's exhibit No. 14, page 13.

{¶ 75} The victim's testimony in this regard is also supported by the testimony and report of DNA Analyst Marissa Esterline. Esterline tested the victim's rape kit and the evidence recovered at the scene. Esterline testified that the vaginal swabs from the victim's rape kit tested positive for blood, and that no foreign DNA profile was obtained from the epithelial fraction of the victim's vaginal swabs. (Tr. 125.) Esterline stated that blood was present on the victim's underpants and jeans.

{¶ 76} The trial court concluded that the victim's testimony regarding the digital penetration and oral sex was credible and consistent with other known facts, including the fact that the victim "was indeed menstruating on that particular day[.]" (Tr. 268.) The trial court concluded that the victim's testimony was consistent with the text messages: "If you were to believe [appellant's] version of what took place,

your responses to someone who made these allegations literally hours after the alleged conduct took place don't make sense." (Tr. 268.) The trial court was presumably referencing the text messages appellant sent to the victim in which he apologized to the victim.

{¶ 77} For all of the foregoing reasons, and after our thorough and independent review of the record, we cannot say that this is "an exceptional case" in which the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The trial court was in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *Antill*, 176 Ohio St. at 66, 197 N.E.2d 548. The trial court, as the trier of fact, heard all of the testimony in this case, as well as the inconsistencies in the victim's version of the events and appellant's version of the events, and ultimately chose to believe the victim over appellant. The trial court had sufficient information to judge the credibility of each witness, and the court "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 78} The defense's theory of the case was that the sexual conduct between appellant and the victim was consensual, the victim regretted the sexual encounter after-the-fact, and that the victim only alleged that she had been raped by appellant after being "coached" by her friend C.F., two police officers, and the SANE nurse. On the other hand, the state's theory of the case was that appellant forcibly engaged in sexual conduct with the victim and/or coerced her into doing so.

{¶ 79} "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not [this court's] province to choose which [version] we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002 Ohio App. LEXIS 1197, 6 (Mar. 13, 2002), citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Appellant's convictions are not against the manifest weight of the evidence merely because the trial court, as the trier of fact, rejected the defense's theory and found the state's version of the events to be more believable. As noted above, the trial court found the victim's testimony pertaining to Counts 1 and 3 to be credible and "consistent with other known facts in the case[,]" and concluded that appellant's version of the events did not make sense. (Tr. 268.)

{¶ 80} For all of these reasons, we cannot conclude that the trial court lost its way in finding appellant guilty of sexual battery on Counts 1 and 3. Appellant's convictions are not against the manifest weight of the evidence. Accordingly, appellant's sole assignment of error is overruled.

{¶ 81} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

**FRANK D. CELEBREZZE, JR., JUDGE**

**PATRICIA ANN BLACKMON, P.J., CONCURS IN JUDGMENT ONLY;**
**EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION**

**EILEEN A. GALLAGHER, J., DISSENTING:**

{¶ 82} I respectfully dissent. I would reverse appellant's convictions for sexual battery because I believe the trial court improperly convicted him of "compromise offenses" that were not supported by the evidence presented at trial.

{¶ 83} At the conclusion of its case-in-chief, the state requested that the trial court consider sexual battery by coercion in violation of R.C. 2907.03(A)(1) "in the alternative" as a lesser included offense for the three counts of forcible rape in violation of R.C. 2907.02(A)(2) with which appellant had been charged. After hearing all the evidence, the trial court found appellant guilty of two counts of sexual battery by coercion in violation of R.C. 2907.03(A)(1) — one count of sexual battery

based on digital penetration and one count of sexual battery based on oral sex. The trial court found appellant not guilty of the third count of forcible rape based on vaginal intercourse.

{¶ 84} R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.03(A)(1) states: "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."

{¶ 85} Whether a particular offense should be submitted to, or considered by, the finder of fact as a lesser included offense involves a "two-tiered analysis." "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein [the court] determine[s] whether one offense is generally a lesser included offense of the charged offense." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, quoting *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). An offense is "generally a lesser included offense" of another where (1) one offense carries a greater penalty than the other, (2) some element of the greater offense is not required to prove commission of the lesser offense and (3) the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

{¶ 86} The Ohio Supreme Court has held that sexual battery as defined in R.C. 2907.03(A)(1) can be a lesser included offense of forcible rape as defined in R.C. 2907.02(A)(2). *See State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 268; *State v. Wilkins*, 64 Ohio St.2d 382, 415 N.E.2d 303 (1980), syllabus; *see also State v. Brisbon*, 8th Dist. Cuyahoga No. 105591, 2018-Ohio-2303, ¶ 22 ("The law is well settled that * * * sexual battery by coercion * * * could be [a] lesser included offense[] of forcible rape.").

{¶ 87} However, the mere fact that one offense can be a lesser included offense of another offense does not mean that a fact finder should consider the lesser included offense whenever the greater offense is charged. If the first tier is satisfied, under the "second tier," the court

> looks to the evidence in a particular case and determines whether "'[the fact finder] could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11.

*Deanda* at ¶ 6. Thus, only where the evidence presented at trial could reasonably support both (1) an acquittal on the crime charged and (2) a conviction on the lesser included offense, may a lesser included offense be submitted to, or considered by, the trier of fact. *Id.*; *see also State v. Wine,* 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 34 (consideration of a lesser included offense is proper, "'if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense'"); *Wilkins* at 388 ("If the evidence adduced on behalf of the defense is such that if accepted by

the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense.").

{¶ 88} As the Ohio Supreme Court explained in *Wilkins*, this rule protects against convictions for "compromise offenses":

> [Fact finders] [a]re not to be presented with compromise offenses which could not possibly be sustained by the adduced facts. Such unreasonable compromises are detrimental to both the state and the defendant. These compromises can allow [fact finders] to lessen punishment at their unlimited discretion, even when they find the defendant guilty of the greater offense beyond a reasonable doubt. Further, they can allow [fact finders] to convict a defendant of a crime of which he is not guilty beyond a reasonable doubt with a clearer conscience than if only the greater offense were charged.

*Id.* at 387; *see also Wine* at ¶ 22 ("[A] defendant's 'liberty should not be dickered away by a compromised verdict upon another crime.'"), quoting *State v. Loudermill*, 2 Ohio St.2d 79, 81, 206 N.E.2d 198 (1965). Compromise verdicts are most likely in cases in which a defendant presents an "all-or-nothing" defense to the charged offense. *State v. Solomon*, 66 Ohio St.2d 214, 220, 421 N.E.2d 139 (1981) ("There is great potential for unreasonable compromises where the evidence adduced by a defendant constitutes a complete defense to the substantive elements of the crime charged.").

{¶ 89} Rape in violation of R.C. 2907.02(A)(2) and sexual battery in violation of R.C. 2907.03(A)(1) differ (1) in the degree of compulsion applied to the victim — force or threat of force for forcible rape and coercion for sexual battery — and (2) mens rea — purposely for forcible rape and knowingly for sexual battery by coercion. As the majority points out, sexual conduct by "coercion" under R.C. 2907.03(A)(1) is "broader" than "force or threat of force" under R.C. 2907.02(A)(2). Thus, sexual conduct by force can satisfy both the "force" element of R.C. 2907.02(A)(2) and the "coercion" element of R.C. 2907.03(A)(1). *See, e.g., Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 268 ("force or threat of force always constitutes coercion"), quoting *Wilkins* at 386.

{¶ 90} With respect to the differences in the mens rea for the offenses, "[a] person acts purposefully when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). In *Wilkins*, the court explained the difference between these two mental states as they relate to the offenses of forcible rape and sexual battery as follows:

> It is possible for a person to compel another to engage in sexual conduct by force or threat of force knowingly but not purposely. A person could subjectively believe that there is consent where there is none, and in

using his strength could coerce another to submit by force. In such a case he would not intend to do the prohibited act. However, if he is aware of the circumstances that probably exist and that under such circumstances there probably is no consent he would have knowingly coerced another to engage in sexual conduct by force. Consequently, sexual battery as defined in R.C. 2907.03(A)(1) may be a lesser included offense of rape as defined in R.C. 2907.02(A)(1) where force is present.

*Wilkins*, 64 Ohio St.2d at 386-387, 415 N.E.2d 303.

{¶ 91} In *Wilkins*, the defendant was charged with, and found guilty of, forcible rape. *Id.* at 382-384. At trial, the victim testified that she and the defendant had been walking home when the defendant forced himself on her and, despite her protestations, engaged in sexual conduct with her. *Id.* at 382. The state's witnesses testified that they heard the defendant forcing himself upon the victim and heard her pleading for him to stop. *Id.* at 382-383. The defendant testified that he had engaged in consensual sexual conduct with the victim. *Id.* at 383. On appeal, the defendant claimed that the trial court had erred in failing to instruct the jury on sexual battery as a lesser included offense of forcible rape. *Id.* at 384. This court agreed. *Id.* The state appealed, and the Ohio Supreme Court reversed, concluding that the trial court did not err in failing to instruct the jury regarding the crime of sexual battery because the evidence, "even when considered most favorably to the defendant," did not "present any fact pattern upon which the trier of fact could both acquit the defendant of the charge of [forcible] rape * * * and find him guilty of sexual battery under R.C. 2907.03(A)(1)." *Id.* at 384, 388-389. The court explained:

Two completely divergent stories were presented to the jury herein. In defendant's version coercion was not involved. In the prosecution's

version force was clearly involved. No evidence was presented which would allow the jury to find that coercion other than force was used.

Defendant testified that [the victim] initiated the sexual conduct. The prosecution's witnesses testified that they heard defendant forcing himself upon [the victim] and heard her pleading for him to stop. Even in closing argument, defendant's counsel, although varying somewhat from defendant's testimony, contended that [the victim] had consented. No evidence was presented which could reasonably have allowed the jury to find that defendant had misunderstood a refusal to consent. The jury could not have found that defendant had acted knowingly but not purposely; it had to choose between a complete defense, and therefore acquittal, or the commission of the crime of rape. Under these facts the trial court did not err in failing to charge the jury on the crime of sexual battery.

*Id.* at 388-389.

{¶ 92} In my view, a similar conclusion is warranted in this case. Based on the evidence presented at trial, I do not believe it is possible, "under any reasonable view of the evidence," to find appellant not guilty of forcible rape and guilty of sexual battery on the counts at issue. *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, at ¶ 34.

{¶ 93} In this case, the alleged victim, F.C., testified that while she and appellant were sitting on the couch in her living room, appellant got on top of her, forced his hands down her pants and forced his fingers into her vagina. She testified that she said "no," "stop," "get off" and that she was "on [her] period" and that she "grabb[ed] him by his arm" and "tr[ied] to push his fingers out, like push his hand out" but that "he wouldn't stop, he just kept going." F.C. testified that appellant then pulled her pants down, forced his mouth onto her vagina and performed oral sex. She testified that although she kept telling appellant "no" and that she was "on [her]

period" and tried to push his head away, appellant refused to stop. F.C. testified that appellant then carried her to her bedroom, laid her on the bed and proceeded to have vaginal intercourse with her. F.C. testified that she asked appellant to use a condom because she "didn't want him to penetrate me without anything. Since I already knew he was already violating me I didn't want it to be unprotected." She testified that she did not continue to say "no" once they were in the bedroom and was "just going with it" at that point because she was "feeling very shocked about everything," was fearful for her two-and-one-half-year-old daughter asleep in the next room and "didn't know what he was capable of." Appellant testified that this sexual conduct occurred but claimed that it was all consensual.

{¶ 94} In this case, as in *Wilkins*, there was no evidence of coercion other than coercion by force with respect to the allegations of digital penetration and oral sex — the two counts on which the trial court found appellant guilty of sexual battery by coercion. Likewise, there was no evidence that from which it could be reasonably found that appellant had "misunderstood a refusal to consent" or had otherwise "subjectively believed that there [was] consent where there [was] none," i.e., that appellant acted "knowingly" but not "purposely," with respect to those offenses.

{¶ 95} Either the trial court believed F.C. that she told appellant "no," "stop" and "get off" when he digitally penetrated and performed oral sex on her and that appellant nevertheless continued — in which case appellant should have been convicted of forcible rape — or the trial court did not believe F.C. and believed appellant — in which case appellant should have been acquitted of the charges. The

trial court "had to choose between a complete defense, and therefore acquittal, or the commission of the crime of rape." *Wilkins*, 64 Ohio St.2d at 389, 415 N.E.2d 303; *compare Brisbon*, 2018-Ohio-2303, at ¶ 21-25 (trial court did not abuse its discretion in denying defendant's request for a lesser included offense jury instruction where evidence did not, even when considered in the light most favorable to the appellant, present a fact pattern upon which the jury could have reasonably found defendant not guilty of rape, and only guilty of gross sexual imposition or sexual battery); *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 46-48 (trial court did not err in declining to instruct jury on sexual battery as a lesser included offense of rape where victim testified that defendant compelled her to engage in sexual conduct by force and threat of force and no evidence was presented to suggest that defendant compelled victim to submit to sexual conduct by coercion other than force); *State v. Cooper*, 2d Dist. Montgomery No. 23143, 2010-Ohio-5517, ¶ 14-17 (where defendant claimed that complainant victim consented to sexual conduct — a "complete defense" to the rape charge, no instruction on the lesser included offense of sexual battery was warranted; the jury had to choose between the complete defense and acquittal or the commission of the crime of rape). Although F.C. testified that once appellant carried her to her bedroom she stopped protesting and was "just going with it," this occurred after appellant had allegedly digitally penetrated and performed oral sex on F.C. against her will. Accordingly, this testimony could have, at most, impacted the determination of whether the vaginal intercourse between F.C. and appellant was

consensual or coerced by some means other than force. The trial court, however, acquitted appellant of the rape count relating to the allegations of vaginal intercourse.

{¶ 96} Because there is no evidentiary basis in the record for appellant's convictions for sexual battery by coercion as a lesser included offense of forcible rape, I would reverse appellant's sexual battery convictions as being against the manifest weight of the evidence.